JS-6

WISHTOYO FOUNDATION /
VENTURA COASTKEEPER
Jason Weiner (Bar No. 259264)
Email: jweiner.venturacoastkeeper@wishtoyo.org
9452 Telephone Rd. #432
Ventura, CA 93004
Telephone: (805) 823-3301
Facsimile: (805) 258- 5107

Gideon Kracov (State Bar No. 179815)
LAW OFFICE OF GIDEON KRACOV
801 S. Grand Avenue, 11th Floor
Los Angeles, CA 90017-4645
Tel: (213) 629-2071
Fax: (213) 623-7755
Email: gk@gideonlaw.net

Attorneys for Plaintiffs
WISHTOYO FOUNDATION, and
WISHTOYO FOUNDATION'S VENTURA COASTKEEPER PROGRAM

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISHTOYO FOUNDATION, VENTURA COASTKEEPER, a program of the WISHTOYO FOUNDATION,<br><br>    Plaintiffs,<br><br>  v.<br><br>WIGGINS LIFT CO., INC.; DOES 1 THROUGH 10,<br><br>    Defendants. | Civil Case No.:  CV 17-2204-GW(SKx)<br><br>**CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

W1578-000 -- 3043509.2

**WHEREAS,** the Wishtoyo Foundation is a 501(c)(3) non-profit public benefit grassroots corporation organized under the laws of the State of California. The Wishtoyo Foundation's mission is to preserve, protect and restore Chumash culture, the culture and history of coastal communities, cultural resources, and the environment;

**WHEREAS,** Ventura Coastkeeper is a program of the Wishtoyo Foundation. Ventura Coastkeeper's mission is to protect, preserve, and restore the ecological integrity and water quality of Ventura County's inland water bodies, coastal waters and watersheds;

**WHEREAS,** Ventura Coastkeeper and Wishtoyo Foundation are referred to herein as "Wishtoyo" or "Plaintiffs";

**WHEREAS,** the Wiggins Lift Co., Inc. (hereinafter "Defendant") facility is located at 2571 Cortez St., Oxnard, California 93036 ("Wiggins Facility" or "Facility");

**WHEREAS**, on June 26, 2015, Wiggins filed a Notice of Intent ("Notice of Intent") to comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Board] Water Quality Order No. 2014-0057-DWQ ("2015 Permit");

**WHEREAS**, on January 17, 2017 and February 7, 2017, Wishtoyo issued sixty (60) day notice letters ("Notice Letters") to Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), stating its intent to file suit for violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"). The Notice Letter alleged violations of the Clean Water Act for Defendant's discharges of pollutants into receiving waters in violation of ("NPDES") Industrial General Permit No. CAS000001 [State Board] Water Quality Order No. 97-03-DWQ ("1997 Permit"), as superseded by the 2015 Permit;

W1578-000 -- 3043509.2

**WHEREAS**, during the 60-Day notice period, Wiggins made significant efforts to review stormwater management practices at the Facility, including installation of new stormwater management and treatment equipment which resulted in Wiggins incurring significant costs;

**WHEREAS**, during the notice period Wishtoyo and Wiggins have been in comprehensive, good-faith settlement negotiations;

**WHEREAS**, on March 21, 2017, Wishtoyo filed a complaint against Defendant in the United States District Court, Central District of California (Case No. 2:17-cv-2204-GW-SK) entitled *Wishtoyo Foundation et al. v. Wiggins Lift Co., Inc., et al.* ("Complaint");

**WHEREAS**, Plaintiffs and Defendant (collectively referred to herein as the "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint and the Notice Letters without further proceedings;

**WHEREAS**, Defendant denies all allegations of the Complaint and Notice Letters. However, in the spirit of cooperation to settle this matter and to resolve the allegations set forth in the Complaint and Notice Letter without further proceedings, Defendant has compromised, and has agreed to enter into this Consent Decree and to comply with the provisions of this Consent Decree;

**WHEREAS**, the Settling Parties agree that the Consent Decree is an actual agreement that is the product of good faith, arms-length negotiations;

**WHEREAS**, it is the express purpose of the Parties entering into this Consent Decree to protect and enhance the water quality of the Santa Clara River, and the Pacific Ocean, to further the objectives set forth in the Clean Water Act, and to resolve those issues alleged by the Plaintiffs in their Complaint and Notice Letters;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

W1578-000 -- 3043509.2

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.     The Complaint and First Amended Complaint states claims upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.     Plaintiffs have standing to bring this action;

5.     The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

# I.     OBJECTIVES

6.     It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq*., and to resolve those issues alleged by Wishtoyo in its Complaint and Notice Letters without further litigation.  In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to comply with the terms and provisions of this Consent Decree, the Storm Water Permit, and all applicable provisions of the CWA.

# II.     EFFECTIVE DATE AND TERMINATION DATE

7.     The term "Effective Date," as used in this Consent Decree, shall mean the last day for the United States Department of Justice and the United States Environmental Protection Agency (collectively "Federal Agencies") to comment on the Consent Decree,

W1578-000 -- 3043509.2

i.e., the 45th day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review and the Court enters the final Consent Decree, whichever occurs earlier.

8.    This Consent Decree shall terminate on its own terms on August 1, 2020   If there is an ongoing and unresolved dispute about Defendant's compliance with the Consent Decree, the Consent Decree shall extend until the dispute is resolved.

## III.    COMMITMENTS OF THE PARTIES

### A.    Initial Pollution Control Measures for Stormwater at the Facility Associated with Industrial Operations Discharges ("Stormwater Discharges")

9.    The stormwater pollution control measures required by this Consent Decree and the Storm Water Permit shall be designed and operated to manage stormwater generated from a 5-year, 24 hour rainfall event recorded by the National Oceanic and Atmospheric Administration ("NOAA") Oxnard Airport Rainfall gauge ("Design Standard").[1]  For the purpose of this Consent Decree, properly documented Stormwater Discharges, in connection with rainfall events in which precipitation exceeds the Design Standard, are not subject to the requirements of this Consent Decree.

10.    Defendant shall implement the following Best Management Practices ("BMPs") by July 1, 2017, including the BMPs in the current Storm Water Pollution Prevention Plan ("SWPPP"), as depicted in the locations on the site map in Exhibit A hereto, to implement BMPs designed to achieve the Consent Decree Standards listed in Table 1:

    a.  Stormwater Treatment System

        i.  Storm water treatment system will be installed to process storm water from the Blind Sump described in Paragraph 10.e and shall be designed and operated to manage stormwater generated from a 5-year, 24 hour rainfall event recorded by NOAA before discharge to the

---

[1] The 5-year, 24 hour rainfall event recorded by the NOAA Oxnard Airport Rainfall gauge is 3.56 inches.

W1578-000 -- 3043509.2

Discharge Trench shown on the site map in Exhibit A hereto. The treatment system is intended to achieve the Consent Decree Standards listed in Table 1 for Stormwater Discharges caused by storms within the Design Standard.  On or before May 1, 2017, Wiggins shall provide Wishtoyo with a demonstration prepared by a professional engineer that demonstrates that the Storm water treatment system is sized to treat stormwater discharges caused by storms within the Design Standard ("Storm Water Treatment System Demonstration"), and Wishtoyo shall provide comments on the adequacy of the Storm Water Treatment System Demonstration to Wiggins within fourteen (14) days after receipt.  Within fourteen (14) days from the date of Wishtoyo's comments on Defendant's Storm Water Treatment System Demonstration, Defendant shall provide Wishtoyo with a written explanation if Defendant refuses to develop and/or implement any of Wishtoyo's recommended adjustments and or refuses to accept and incorporate any of Wishtoyo's comments. Any disputes as to the adequacy of the Storm Water Treatment System Demonstration shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

b.  Discharge Trench

    i.  The discharge trench is to be cleaned of all silt, sediment and debris.

    ii.  On top of crushed rock to be lined in the trench, approximately every 20 feet, a row of woven fabric mono filament crushed rock bags is to be placed.

    iii.  The rock bags are to be filled with 3/4 inch minus crushed rock

    iv.  Each row of rock bags is to have the corners curved upstream to reduce or eliminate run off water bypassing the row of bags.

W1578-000 -- 3043509.2

     v.  The trench is to be terminated with a 2 or 3 high dam of monofilament woven fabric rock bags filled with 3/4 inch crushed rock. Dam width should be sufficient to eliminate the water by passing the dams.

    vi.  The Discharge Trench receives water after being processed through the Storm water treatment system which conveys water to a single discharge point as identified in Exhibit A.

  c.  Parking lot and facility yard

    i.  Pot holes will be repaired.

    ii.  All surface soil will be removed to expose the asphalt surface of the parking and yard lot.

  d.  Covered facility

    i.  Storm water gutters are to be installed along the northern perimeter of the roof.

    ii.  The roof gutter is to direct the flow of storm water in a closed conveyance to the main building and eventually off site. The water is to be consider as a storm water discharge that has not been contacted by industrial activity.

    iii.  Roof water from the main building is also to be conveyed off site without industrial activity contact.

  e.  Blind Sump

    i.  The sump is to have concrete lined walls and a concrete bottom.

    ii.  A PVC perforated or screened pipe is to be located either in the center of the sump or at the lowest corner.

    iii.  A lift pump is to be installed inside the perforated pipe that discharges water to the water treatment system.

    iv.  Yard storm water is to be directed to the blind sump.

W1578-000 -- 3043509.2

f. Plasma Torch Area

  i. The Torch cutting table is to be moved to be centralized under the existing canopy.

  ii. Steel skeletons are to be cut to facilitate reuse of salvageable material and facilitate size reduction of the remaining skeleton pieces for readily discarding of the scrap material.

g. Trash bins

  i. To be covered at end of shift if rain is imminent.

  ii. Non leaking storage containers are to be used.

  iii. Roll off bins to be covered when rain is imminent.

h. Material Storage

  i. Flat stock is to be raised off the ground and covered when rain is imminent.

  ii. Bars stock and box section stock is to be store on covered racking to protect the stored material from rain fall.

For Stormwater Discharges during storms within the Design Standard, if the BMPs set forth in this paragraph do not effectively prevent discharges or reduce contamination in stormwater discharged from the Facility in a manner sufficient to achieve the Consent Decree Standards listed in Table 1 below, Defendant shall develop and implement additional BMPs pursuant to Paragraph 14 of this Consent Decree to meet the Consent Decree Standards in Table 1 of this Consent Decree. The above listed BMPs must be installed by July 1, 2017. The implementation of these activities are material terms of the Consent Decree.

  11. Defendant shall use the NOAA Oxnard Airport Rainfall gauge to accurately determining total rainfall at the Facility over 24 hours, or if the NOAA Oxnard Airport Rainfall gauge is not operational, the closest NOAA, City of Oxnard, or Ventura County operated rain gauge.

W1578-000 -- 3043509.2

1    12.     Defendant shall not discharge stormwater or non-storm water that is not

2    otherwise authorized by the Storm Water Permit or the Facility's NPDES permit no.

3    CAS000001 Order 2014-0057-DWQ ("Individual Permit").

4        **B.     Reduction of Pollutants in Discharges**

5        13.    <u>Consent Decree Standards and Contaminant Reduction</u>.  Beginning with the

6    2017-2018 Wet Season (defined as October 1 – May 31) ("Wet Season"), contaminants

7    in Stormwater Discharges shall not exceed the standards in Table 1[2] ("Consent Decree

8    Standards").  Beginning with the 2017-2018 Wet Season, if sampling conducted pursuant

9    to Paragraph 16 or 17 of this Consent Decree demonstrates an exceedance of two (2) or

10   more numeric limits in Table 1 during one Wet Season, Defendant shall implement an

11   Action Plan pursuant to paragraph 14 of this Consent Decree sufficient to meet the

12   applicable Consent Decree Standard(s).

**Table 1**

| Contaminant | Consent Decree Standard (All but pH expressed as mg/L; hardness dependent limits in bold) |
|---|---|
| Total Suspended Solids | 100 |
| Oil and Grease | 15 |
| Total Recoverable Aluminum | 0.750 |
| Total Recoverable Iron | 1.0 |
| Chemical Oxygen Demand | 120 |
| pH | 6.0 to 8.5 units |
| Dissolved Copper | **0.034** |
| Total Recoverable Copper | **0.0332** |
| Dissolved Lead | **0.19** |
| Total Recoverable Lead | **0.262** |

---

[2] The total recoverable Consent Decree Standards in Table 1 are derived from U.S. EPA Benchmarks included in the NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("Multi-Sector Permit"), 65 Federal Register 64839, 64766 (2000); *see also*, Multi-Sector Permit (2008). The dissolved Consent Decree Standards in Table 1 are derived from the Criteria for Priority Toxic Pollutants in the State of California, 40 C.F.R. § 131.38 ("CTR"). Several of the Consent Decree Standards are hardness-dependent.  The total recoverable Consent Decree Standards are expressed in Table 1 using an assumed hardness of 270 mg/l CaCO$_3$. The dissolved Consent Decree Standards are expressed in Table 1 using an assumed hardness of 270 mg/l CaCO$_3$. Defendant has adjusted the total recoverable Consent Decree Standards using the methods provided in Appendix J of the 2008 EPA MSGP (Multi-Sector General Permit), and has adjusted the dissolved Consent Decree Standards using the methods provided in the CTR.

W1578-000 -- 3043509.2

| Contaminant | Consent Decree Standard (All but pH expressed as mg/L; hardness dependent limits in bold) |
|---|---|
| Dissolved Zinc | **0.27** |
| Total Recoverable Zinc | **0.260** |
| Total Recoverable Magnesium | 0.064 |

14. **Action Plans for Table 1 Exceedances.** Beginning with the 2017-2018 Wet Season, Defendant shall submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") if sampling conducted pursuant to paragraph 16 or 17 of this Consent Decree demonstrates an exceedance of two (2) or more numeric limits in Table 1 during one Wet Season, Defendant shall submit an Action Plan, if required, no later than July 1 following the Wet Season in which the Table 1 Consent Decree Standard was exceeded. Action Plans are not required for any Stormwater Discharge that is the result of precipitation in excess of the Design Standard.

a. <u>Action Plan Requirements</u>. Action Plans shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the Consent Decree Standard(s), (2) an assessment of the source of each pollutant exceedance, (3) the identification of additional BMPs, including structural BMPs and/or systems/devices to treat stormwater prior to discharge from the Facility, with demonstrated effectiveness in meeting the applicable Consent Decree Standard(s), and that will be implemented to reduce and/or eliminate the discharge of pollutants from the Facility so that contaminants in Stormwater Discharges do not exceed the applicable Consent Decree Standard(s) ("Action Plan BMPs"), and (4) time schedules for implementation of the Action Plan BMPs. The time schedule(s) for implementation shall ensure that all Action Plan BMPs are implemented no later than October 1 (prior to the Wet Season).

b. <u>Action Plan Review</u>. Wishtoyo shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within thirty (30) days from the date Wishtoyo comments on Defendant's Action Plan, Defendant shall provide Wishtoyo with a written explanation if Defendant refuses to develop and/or implement

W1578-000 – 3043509.2

any of Wishtoyo's recommended additional BMPs and or refuses to accept and incorporate any of Wishtoyo's comments.

c. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

d. Defendant shall revise its SWPPP to include the Action Plan BMPs by October 1 (prior to the Wet Season).

e. Defendant shall have until October 1 (prior to the Wet Season) to implement any Action Plan BMPs agreed upon by Defendant and Wishtoyo.

f. If any Action Plan BMP(s) require any agency approval, then Defendant shall contact Wishtoyo to request an extension of the deadline, if necessary, to implement the Action Plan BMP(s) requiring agency approval. Wishtoyo's consent to Defendant's requested extension shall not be unreasonably withheld.

C. **Storm Water Pollution Prevention Plan**

15. <u>Additional Revisions to SWPPP</u>. Defendant shall revise the SWPPP by July 1, 2017 and additionally as necessary and appropriate, including but not limited to: (a) each time additional BMPs are developed to achieve compliance with the terms of this Consent Decree and/or the Storm Water Permit; (b) as required by the Storm Water Permit, as it may be amended. Defendant shall submit a revised SWPPP to Wishtoyo for review and comment as soon as it is completed and Wishtoyo may provide comments on the revised SWPPP within thirty (30) days of receipt. Defendant will consider and respond to Wishtoyo's comments within thirty (30) days of receipt. Any disputes as to the adequacy of any revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

D. **Sampling and Monitoring at the Facility**

16. <u>Sample Analysis and Sample Frequency</u>. Defendant shall collect and analyze stormwater samples as follows:

a. The Defendant shall collect storm water samples from each discharge location at the Facility in the event that discharges occur at the Facility from at least four (4) qualifying storm events per Reporting Year (October 1 to the following May 31) in accordance with Section XI.B of the 2015 Permit. Any failure to sample a discharge from each discharge location at the Facility until the specified four (4) qualifying storm events per Reporting Year have been sampled shall be documented and submitted to Wishtoyo within ten (10) days of the date a sample was required to have been collected but was not. The Defendant shall analyze the samples for the constituents identified in Table 1.

b. Defendant shall use a state certified laboratory that adheres to the EPA methods for total and dissolved metals analysis to conduct all sample analysis pursuant to this Consent Decree. The Defendant shall select laboratories and analytical limits such that, at a minimum, the method detection limits are below the Consent Decree Standards in Table 1.

**E.    Compliance Monitoring and Reporting**

17.    <u>Annual Site Visits</u>.  A Wishtoyo representative, and if Wishtoyo desires up to two additional representatives or consultants (including an attorney), may conduct two Wet Season wet weather site visit of the Facility and one dry weather site visit of the Facility ("Site Visits") each year that this Consent Decree is in effect.  Site Visits shall occur during normal business hours (7:00 a.m. to 5:00 p.m., Monday through Friday, excluding holidays).  Wishtoyo shall provide Defendant with as much notice as possible, but at a minimum shall provide at least twenty four (24) hours' notice prior to a Site Visit during a wet weather event during the Wet Season, and five (5) days' notice prior to a Site Visit during dry weather.  Notice will be provided by telephone and electronic mail; effective notice for purposes of this paragraph requires confirmation from Defendant, which may not be unreasonably withheld, at least twelve (12) hours before the Site Visit,

W1578-000 -- 3043509.2

by e-mail or telephone, that it is aware that Wishtoyo will be conducting a Site Visit. During the Site Visit, Defendant shall allow Wishtoyo and/or its representatives access to the Facility's SWPPP, the Monitoring and Reporting Plan, monitoring records related to Stormwater Discharges, and to all monitoring reports and data for the Facility related to Stormwater Discharges. During a wet weather Site Visit, Wishtoyo and/or its representatives may conduct sampling of Stormwater Discharges from the Facility, which can be used for purposes of this Consent Decree to demonstrate that the concentration of any Table 1 contaminant in any Stormwater Discharge exceeds the applicable Consent Decree Standard and thus whether an Action Plan pursuant to paragraph 14 of this Consent Decree is required. Notice of Site Visits via telephone to Defendant shall be made to: Michele Wiggins-McDowell at 805-485-7821 and Jon Shardlow 909-723-1770. Notice of Site Visits via Telephone to Plaintiff shall be made to: Jason Weiner at (805) 823-3301 and Mati Waiya (805) 794-1248.

18. <u>Wishtoyo's Compliance Monitoring</u>. Defendant agrees to compensate Plaintiffs for time to be spent monitoring Defendants' compliance with the Consent Decree. To this end, Defendant shall pay Wishtoyo the sum of Five Thousand Dollars ($5,000) to be received within thirty (30) days of the Effective Date for Wishtoyo's efforts to monitor Defendant's compliance with this Consent Decree. Anytime Defendant is required to submit an Action Plan to Wishtoyo pursuant to paragraph 14 of this Consent Decree, Defendant shall make a compliance monitoring payment in the amount of Two Thousand Five Hundred Dollars ($2,500) to be received upon submission of the Action Plan. All payments required under this paragraph shall be submitted and made payable to "Ventura Coastkeeper," addressed to Ventura Coastkeeper, 9452 Telephone Rd. #432, Ventura, CA 93004, and sent via courier or overnight delivery.

19. <u>Data Reporting</u>. During the life of this Consent Decree, Defendant shall provide Wishtoyo with analytical data from sampling conducted pursuant to this Consent Decree within seven (7) business days of Defendant receiving the analytical results from

W1578-000 – 3043509.2

the laboratory; Defendant shall also e-mail Wishtoyo when it submits monitoring data, inspection reports, and laboratory analyses to the State Board pursuant to the Storm Water Permit.

20.  <u>Document Provision</u>.  During the life of this Consent Decree, Defendant shall copy Wishtoyo on all formal, written communications (which excludes e-mails) Defendant submits to the Regional Board or the State Board regarding the Facility's compliance with the Storm Water Permit.  Such communications shall be provided to Wishtoyo concurrently as they are sent to the Regional Board or State Board.  Defendant shall provide to Wishtoyo any formal, written communications (which excludes e-mails) it receives from the Regional Board or State Board regarding the Facility's compliance with the Storm Water Permit within ten (10) business days of receipt by Defendant.

**F.  Environmental Project, Reimbursement of Litigation Fees and Costs**

21.  <u>Environmental Project</u>. Defendant agrees to make a payment of Five Thousand Dollars ($5,000) to be received within thirty (30) days of the Effective Date to the Rose Foundation for Communities and the Environment for a project related to water quality designed to analyze, reduce, prevent, or otherwise mitigate the ecological effects of stormwater and/or non-stormwater discharges to the Santa Clara River.  The payment shall be mailed via certified mail or overnight delivery to the attention of Tim Little at 1970 Broadway, Suite 600, Oakland, California 94612-2218.  Defendant shall provide Wishtoyo with a copy of such payment.

22.  <u>Reimbursement of Plaintiffs' Fees and Costs</u>. Defendant agrees to reimburse Plaintiffs for their investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter in an amount totaling Twenty Four Thousand Dollars ($24,000).  Wishtoyo has agreed to Defendant's structured payment schedule requiring an initial payment of Eight Thousand Dollars ($8,000) to be received within

W1578-000 -- 3043509.2

thirty (30) days of the Effective Date followed by two  (2) equal monthly payments of Eight Thousand Dollars ($8,000) to be received by the first of each following month.  All such payments shall be made payable to "Law Office of Gideon Kracov," addressed to Gideon Kracov, 801 S. Grand Av., 11th Fl., Los Angeles, CA 90017 and sent via certified mail or overnight delivery.  In the event of a late payment, written notice by Plaintiffs must be provided upon which Defendants shall have 5 business days to cure.   Defendants shall have the option, but not the obligation, to prepay the balance of the outstanding amount of reimbursement of Plaintiffs' fees and costs at any time.

### G.    Agency Review of Consent Decree

23.    Plaintiffs shall submit this Consent Decree to the Federal Agencies, within three (3) days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant.  In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

## IV.    DISPUTE RESOLUTION

24.    This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

25.    <u>Meet and Confer</u>.  A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's proposal to resolve the dispute under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute no later than fourteen (14) calendar days from the date of the notice.

26.    If the Parties cannot resolve a dispute by the end of the meet and confer

W1578-000 -- 3043509.2

process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

27.    If Wishtoyo or Wiggins initiates a motion or proceeding before the Court to enforce the terms and conditions of this Consent Decree, Wishtoyo shall be entitled to recover reasonable fees and costs incurred to enforce the terms of this Consent Decree consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §§ 1365, 1319.

## V.    MUTUAL GENERAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

28.    The Parties hereby release each other and each of their current, former, and future predecessors-in-interest, successors in interest, parents, ultimate parent companies, directly and indirectly affiliated, joint ventures, partnerships, related companies, subsidiaries and/or affiliates, together with all their current and former respective officers, employees, directors, partners, members, Board of Directors, shareholders, officials, agents, accountants, attorneys, insurance carriers and reinsurers, sureties, representatives, independent contractors, consultants, advisors, and all successors, assigns and persons/entities in privity with any one or more of such persons/entities, of and from any and all demands, actions, causes of action, suits, obligations, assessments, damages, liabilities, investigation costs, remediation costs, restoration costs, other costs, losses, or expenses (including attorneys' fees and expert witness fees) of any kind or nature whatsoever (whether legal or equitable, past, present or future, ascertained or unascertained, known or unknown, suspected or unsuspected) that have been or could have been asserted up through the Effective Date, including, but not limited to, claims that were presented or that could have been presented in the Complaint or Notice Letters. However, this general release specifically excludes claims for the Defendant's failure to

W1578-000 – 3043509.2

comply with this Consent Decree.

29.     With respect to, and subject to the terms of, the general release contained in paragraph 28 above, the Parties expressly waive any rights or benefits available under section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR
> SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME
> OF EXECUTING THE RELEASE, WHICH IF KNOWN BY
> HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

30.     Except as stated in paragraphs 28 and 29, this Consent Decree does not limit Plaintiffs' right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, state, local, or federal agency, or any other judicial or administrative body on any other matter relating to Defendant, including, without limitation, the right to advocate for stricter effluent limits or monitoring requirements in any Individual NPDES Permit and in the Storm Water Permit when they are reissued, amended, or renewed.

31.     Plaintiffs will give Defendant at least 15 days' written notice before making any formal or informal complaint related to or under the Clean Water Act (including without limitation any notices of intent to sue, lawsuits, or requests for agency action or enforcement) concerning the Facility to any administrative body, court, or government entity.  If either Party desires to issue a press release regarding this Consent Decree or issues related to the Complaint or the Notice Letters, the Parties shall meet and confer to develop mutually agreeable language for a press release.

32.     Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Defendant maintains and reserves all defenses it may have to any

W1578-000 -- 3043509.2

alleged violations that may be raised in the future.

33. <u>Force Majeure</u>. Defendant shall notify Wishtoyo pursuant to the terms of this paragraph, when timely implementation of the requirements set forth in this Consent Decree becomes impossible, despite the timely good-faith efforts of Defendant, due to circumstances beyond the reasonable control of Defendant or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant. In no circumstances shall a claim of inability to pay be considered Force Majeure.

a. If Defendant claims impossibility, it shall notify Wishtoyo in writing within twenty-one (21) days of the date that Defendant first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and specifically refer to this Section. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. Defendant shall adopt all reasonable measures to avoid and minimize such delays.

b. The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of Defendant, due to circumstances beyond the control of Defendant that could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant, new deadlines shall be established.

c. If Wishtoyo disagrees with Defendant's notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV. In such proceeding, Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be

W1578-000 -- 3043509.2

1 caused by force majeure and the extent of any delay attributable to such circumstances.

2 **VI.    MISCELLANEOUS PROVISIONS**

3    34.    <u>Construction</u>.  The language in all parts of this Consent Decree shall be

4 construed according to its plain and ordinary meaning, except as to those terms defined in

5 the Storm Water Permit, the Clean Water Act, or specifically herein.

6    35.    <u>Choice of Law</u>.  The laws of the United States shall govern this Consent

7 Decree.

8    36.    <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence

9 of this Consent Decree is held by a court to be unenforceable, the validity of the

10 enforceable provisions shall not be adversely affected.

11    37.    <u>Correspondence</u>.  All notices required herein or any other correspondence

12 pertaining to this Consent Decree shall be sent by regular mail or electronic mail as

13 follows:

14    If to Plaintiffs:

15

16 Jason Weiner
    General Counsel

17 Wishtoyo Foundation / Ventura Coastkeeper

18 9452 Telephone Rd. #432
    Ventura, CA 93004

19 jweiner.venturacoastkeeper@wishtoyo.org

20 cc: matiwaiya@wishtoyo.org

21    If to Defendants:

22

23 Jonathan Shardlow
    Gresham Savage Nolan & Tilden

24 550 E. Hospitality Lane
    San Bernardino, CA 92408

25 Jonathan.Shardlow@greshamsavage.com

26 cc: michelem@wigginslift.com

27

28

W1578-000 -- 3043509.2

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

38. <u>Effect of Consent Decree</u>. Plaintiffs do not, by its consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

39. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

40. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

41. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

42. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

43. <u>Authority</u>. The undersigned representatives for Plaintiffs and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

W1578-000 -- 3043509.2

44.     The provisions of this Consent Decree apply to and bind the Parties, including their respective successors in interest by way of merger, acquisition, or otherwise, and their permitted assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

45.     There are no intended third-party beneficiaries to this Consent Decree, and only the Parties and their heirs, assigns, representatives, and successors may enforce this Consent Decree.

46.     The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

The undersigned representatives for Wishtoyo and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree and that this Consent Decree binds that party.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

**IT IS SO ORDERED:**

Date: May 18, 2017     _____

GEORGE H. WU, U.S. District Judge

W1578-000 -- 3043509.2

APPROVED AS TO CONTENT:

WISHTOYO FOUNDATION AND
VENTURA COASTKEEPER

Dated: _____, 2017    _____
                                  Mati Waiya, Executive Director
                                  Wishtoyo Foundation and its Ventura
                                  Coastkeeper Program


WIGGINS LIFT CO., INC.

Dated: _____, 2017    _____
                                  Michele Wiggins-McDowell, CEO
                                  Wiggins Lift Co., Inc.

W1578-000 -- 3043509.2

APPROVED AS TO FORM:

GRESHAM SAVAGE NOLAN &
TILDEN, P.C.

Dated:      March ___, 2017

_____
Jonathan E. Shardlow
Attorney for Defendant


WISHTOYO FOUNDATION AND
VENTURA COASTKEEPER

Dated:      March ___, 2017

_____
Jason Weiner
General Counsel
Attorney for Plaintiffs Wishtoyo Foundation
and its Ventura Coastkeeper Program


LAW OFFICE OF GIDEON KRACOV

Dated:      March ___, 2017

_____
Gideon Kracov
Attorney for Plaintiffs Wishtoyo Foundation
and its Ventura Coastkeeper Program

W1578-000 -- 3043509.2

Exhibit A

W1578-000 -- 3043509.2

SITE PLAN

Cortez Street

Cortez and Ventura Blvd.

| 90 % | Impervious | Crushed rock |

Scale: 1" = 80'
March 7, 2017
3.7 acres

Gate

New & Used Oil (Bermed & Covered)

Acetylene (Raised & Covered)

Berm

Office

Berm

Discharge Trench

Storage Container

Oxygen Gas (Raised & Covered)

Cutting & Welding

Assembly

★

⊠ (Covered)

Saw Cutting

Spray Prep

Spray Booth

Storage Building

Treatment System

Repair & Assembly

★

Overhang

Fence

Blind Sump

Dirt Berm

Oxygen Tank (1,500 Gal)

Cargo Boxes

Torch Cutter (Covered)

Propane (450 Gal)

⊠⊠

Dumpsters

Concrete Block Berm

N

WDID#4 561017490
Wiggins Lift Co.
2571 Cortez Street
Oxnard, CA 93030
(805) 485-7821

◇ Air Compressor
■ Storm Drain
★ Hazardous Waste
● Discharge Point
  Crane
⊠ Trash Dumpster
⊞⊞⊞ Uncovered Storage Racks